UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Judith A. O'Brien,

    Plaintiff,

v.                                                                                  Civ. No. 04-4496 (JNE/JSM)
                                                                                   ORDER

One Call Concepts, Inc.,

    Defendant.

---

Clair E. Schaff, Esq., Connor Satre & Schaff, L.L.P., appeared for Plaintiff Judith A. O'Brien.

Joseph Sokolowski, Esq., and Kevin R. Coan, Esq., Parsinen Kaplan Rosberg & Gotlieb, P.A., appeared for Defendant One Call Concepts, Inc.

---

Judith O'Brien alleges that her former employer, One Call Concepts, Inc. (One Call), terminated her employment in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654 (2000), and Minnesota's whistleblower statute, Minn. Stat. §181.932 (2004). The case is before the Court on One Call's Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.[1]

## I.    BACKGROUND

One Call assists the public in locating buried utility lines by operating a one-call utility notification center in Minnesota. One Call receives telephone calls from parties who plan to excavate property and passes on the location of the excavation project to utilities that mark the location of buried utility lines. O'Brien worked intermittently as an operator for One Call from 1995 to 2003.

---

[1] O'Brien does not oppose One Call's motion as it relates to the whistleblower claim. She acknowledges that dismissal of the whistleblower claim is appropriate. Accordingly, the Court dismisses it.

Under One Call's attendance policy, employees accrue "occurrences" for unexcused or unapproved absences in a calendar year. As of July 16, 2003, O'Brien accrued 10.5 occurrences. The following day, O'Brien received a warning that informed her an additional occurrence would result in a written warning. On August 20, 2003, O'Brien received another occurrence. Two days later, One Call gave O'Brien a written warning that informed her she would receive a second written warning upon accruing twelve occurrences. In late September, One Call assessed three occurrences to O'Brien. In early October, O'Brien received a second written warning that stated O'Brien had accrued 14.5 occurrences and "may be terminated immediately" upon accruing fifteen occurrences. O'Brien accrued an additional occurrence in early December. On December 8, 2003, One Call terminated her employment.

O'Brien asserts many of her absences in 2003 were due to migraines and dental issues. O'Brien was first diagnosed with migraines in the late 1980s or 1990. At that time, the diagnosing doctor told her she was allergic to caffeine and told her to stop consuming caffeine within two weeks. The diagnosing doctor did not prescribe any medications for O'Brien's migraines because the medications contained caffeine. In the years after her diagnosis, O'Brien occasionally asked doctors she met at hospitals where she worked about treatments for migraine headaches. At her deposition, she described these conversations:

> And over the course of the years I would ask different doctors as you meet them in the hall and stuff like when you work in the hospital, wherever, and I would ask them and they would keep saying, Judy, there still isn't anything for migraines.

In October 2003, O'Brien visited her doctor while experiencing a migraine. She received samples of a new, caffeine-free medication for migraine headaches.

In 2003, O'Brien experienced several dental issues. In her affidavit, she asserts that she broke a tooth on February 19, 2003, just before coming to work. One Call's records indicate she

arrived at work a few minutes before noon. On March 21, 2003, O'Brien had a dental appointment. At her deposition, she could not recall what work was performed on March 21. On April 23, 2003, O'Brien broke another tooth. That day, she visited her dentist and scheduled dental appointments on May 5, 6, and 7, 2003, the first available dates. After breaking her tooth, she continued to work until her appointment on May 5. She also submitted a note to One Call from the dentist that stated: "Judy O'Brien is having dental work performed on May 5th, 6th, & 7th of 2003. She will not be able to work those days." At her deposition, O'Brien described the dental work performed in early May as follows: "Well, they had to replace a tooth, they had to wire my mouth, they had to have it fitted, taken to the lab, brought back and have it fitted, all those different types of things." On July 8, 2003, O'Brien worked through lunch and went to the dentist for a follow-up appointment.

O'Brien alleges One Call violated the FMLA by terminating her based in part on absences caused by her migraines and dental issues. One Call now moves for summary judgment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that

3

there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

One Call first argues it is entitled to summary judgment because O'Brien has not demonstrated that she has a "serious health condition." Under the FMLA, an eligible employee may have up to twelve weeks of leave during any twelve-month period if the employee suffers from a "serious health condition" that renders him "unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where an employee has not shown his absences to be a result of a serious health condition, he is not protected by the FMLA." *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1195 (8th Cir. 2000); *see Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1147 (8th Cir. 2001). As relevant here, a "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).

Regulations promulgated by the Secretary of Labor set forth an objective definition of a serious health condition. 29 C.F.R. § 825.114 (2005); *see* 29 U.S.C. § 2654 (directing Secretary of Labor "to prescribe such regulations as are necessary to carry out" the FMLA); *Thorson v. Gemini, Inc.*, 205 F.3d 370, 376-77 (8th Cir. 2000). The parties dispute whether O'Brien satisfies the definition that appears in 29 C.F.R. §825.114(a)(2)(iii), which defines a serious health condition that involves continuing treatment by a health care provider as:

> Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

4

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
> (C) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, *etc.*).

Treatment "includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." *Id*. § 825.114(b).[2]

According to One Call, O'Brien's migraine headaches do not constitute a chronic serious health condition because they did not require periodic visits for treatment by or under the direct supervision of a health care provider. In this case, O'Brien was first diagnosed with migraine headaches in the late 1980s or 1990. She next visited her doctor for the purpose of treating her migraine headaches in October 2003, approximately thirteen to fifteen years after the diagnosis. In the interim, she had conversations about migraine treatments with doctors she met in halls while working at hospitals. There is no evidence that the doctors examined her during the

---

[2] In her motion papers, O'Brien raises arguments based on 29 C.F.R. § 825.114(a)(2)(i), (c), to demonstrate she had a serious health condition. At the motion hearing, she agreed that the issue before the Court is whether she experienced a serious health condition as defined in section 825.114(a)(2)(iii)—that is, whether she had a chronic serious health condition. Even if she had not abandoned them, her other arguments would not have avoided summary judgment.

First, O'Brien reads 29 C.F.R. § 825.114(c) to define migraine headaches and non-routine dental issues as serious health conditions. The Court disagrees. Section 825.114(c) lists conditions that ordinarily do not constitute serious health conditions. It does not state that migraine headaches and non-routine dental problems are necessarily serious health conditions. For a plaintiff's malady to constitute a serious health condition, the plaintiff must satisfy the objective definition of serious health condition. *Rankin*, 246 F.3d at 1147-48; *see Rhoads v. F.D.I.C.*, 257 F.3d 373, 382 n.7 (4th Cir. 2001) (stating that migraine headaches "potentially qualify for FMLA leave").

Second, O'Brien asserts her migraine condition satisfies the definition of "serious health condition" that appears in 29 C.F.R. § 825.114(a)(2)(i). There is no evidence in the record that O'Brien's migraines produced a period of incapacity that lasted more than three consecutive calendar days and that involved treatment. Consequently, her migraine condition is not a serious health condition as defined in section 825.114(a)(2)(i). *See Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1323 (10th Cir. 2005); *Rankin*, 246 F.3d at 1148.

conversations. Nor is there any evidence that the doctors evaluated her migraine headaches. There is no evidence of the frequency of the conversations. Her migraine headaches did not require her to engage in the conversations; the conversations took place while she was working. In short, the record, viewed in the light most favorable to O'Brien, reveals that she sought treatment for her migraines twice over the course of approximately thirteen to fifteen years. No reasonable finder of fact could conclude that her migraine condition required periodic visits for treatment by or under the direct supervision of a health care provider. *See Thorson*, 205 F.3d at 377 (holding that elements of test for a serious health condition under the FMLA present issues of fact). Her migraine condition therefore does not constitute a serious health condition under the FMLA.

As to O'Brien's dental issues, One Call asserts that they do not constitute a chronic serious health condition. O'Brien's dental issues in 2003 include a broken tooth in February. There is no evidence in the record of an underlying condition that caused the tooth to break or to connect this event to the tooth broken in April. Nor is there any evidence in the record to demonstrate what treatment O'Brien sought for the broken tooth. Without evidence to indicate the tooth broken in February was anything other than a routine dental problem, O'Brien cannot rely on it to establish a serious health condition. *See* 29 C.F.R. § 825.114(c).

The same conclusion is warranted with respect to her dental appointment in March. At her deposition, she could not recall what work was performed at the appointment. In her memorandum of law, she characterizes the appointment as a "regular dental trip[]" rather than one to treat a "serious dental health condition." Accordingly, O'Brien cannot rely on it to demonstrate the existence of a serious health condition. *See id*.

Finally, One Call asserts the dental issues that arose out of the tooth O'Brien broke in April do not constitute a chronic serious health condition. According to One Call, O'Brien cannot establish the dental issues continued over an extended period of time or caused episodic periods of incapacity. In this case, O'Brien remedied the tooth she broke in April within two weeks. Plainly, O'Brien's dental issues did not continue for an extended period of time. *See Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 190 n.7 (3d Cir. 1997) (characterizing an extended period of time as one that spans several months to many years). Nor did her dental issues cause episodic periods of incapacity. After breaking her tooth, she continued to work until her appointments in early May. No periods of incapacity followed the May appointments; the dental work remedied her broken tooth. Viewed in the light most favorable to O'Brien, the record reveals that the tooth O'Brien broke in April 2003 did not give rise to a serious health condition.

Having failed to demonstrate that she experienced a serious health condition, O'Brien is not entitled to the protections of the FMLA.[3] *See Rankin*, 246 F.3d at 1147; *Frazier*, 200 F.3d at 1195. The Court therefore grants One Call's motion for summary judgment.

---

[3] Having concluded that O'Brien did not demonstrate she had experienced a serious health condition, the Court need not consider the parties' arguments regarding the FMLA's notice requirements. *See Rhoads*, 257 F.3d at 384; *Rankin*, 246 F.3d at 1148; *Thorson*, 205 F.3d at 377, 381-82.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. One Call's Motion for Summary Judgment [Docket No. 17] is GRANTED.

2. O'Brien's Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 27, 2005

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge